# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4391 | **DATE** | 5/15/2001 |
| **CASE TITLE** | In Re: IN RE: ANICOM | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Motion hearing held. Status hearing set to May 30, 2001 at 9:30 a.m. Enter Memorandum Opinion and Order. Defendants motions to dismiss are denied [64-1] and [65-1].

(11) ☒ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | | number of notices |
| | Notices mailed by judge's staff. | | MAY 18 2001 date docketed |
| | Notified counsel by telephone. | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials |
| | Mail AO 450 form. | FILED FOR DOCKETING | |
| | Copy to judge/magistrate judge. | 01 MAY 17 PM 3: 13 | date mailed notice |
| LG | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


DOCKETED
MAY 1 8 2001

IN RE ANICOM INC. SECURITIES LITIGATION )  No. 00 C 4391
) 
)  Judge John W. Darrah

## MEMORANDUM OPINION AND ORDER

The State of Wisconsin Investment Board brings this action on behalf of itself and the class that it seeks to represent against defendants Anicom Inc., Scott Anixter (Scott), Carl Putman (Putman), Donald Welchko (Welchko), and Alan Anixter (Alan), alleging securities fraud in violation of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C §§ 78j(b) and 78t(a). Before this Court is defendants Scott, Putman, Welchko, and Alan's Motions to Dismiss plaintiffs' consolidated class action complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and failure to plead fraud with particularity pursuant to Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 (PSLRA), 15 U.S.C. § 78u-4(b)(1).

I. FACTS

The following facts are derived from plaintiffs' Consolidated Class Action Complaint. Anicom is a publicly-traded company. Defendant Scott served as Chief Executive Officer and a director of the company from 1993 through September 1, 1999. From September 1, 1999 through May 17, 2000, Scott was Chairman of the Board of Directors of Anicom. From May 17, 2000 until December 31, 2000, at which time Scott retired from Anicom, Scott was Chairman Emeritus and Director of Strategic Planning.

Defendant Putman was a director at Anicom during the class period. Putman served as

President and Chief Operating Officer of Anicom until September 1, 1999. As of September 1, 1999 until July 18, 2000, when he was placed on administrative leave, Putman was the President and Chief Executive Officer of Anicom.

Defendant Welchko was Vice President and Chief Financial Officer of Anicom from 1995 until September 1, 1999. From September 1, 1999 until his resignation on July 18, 2000, Welchko was Anicom's Senior Executive Vice President and Chief Financial Officer. He was a director of Anicom throughout the class period and a member of Anicom's Audit Committee in 1998 and 1999.

Defendant Alan was an Anicom director from its founding until his resignation on May 17, 2000. He served as Chairman of the Board of Directors until September 1999 and as Chairman of Anicom's Executive Management Committee from September 1999 until his retirement.

Anicom, which is in the business of distributing multimedia technology products, was founded in 1993. Anicom began being traded publicly in 1995. Shortly afterward, Anicom began its "growth through acquisition" strategy of acquiring independently owned wire and cable distributors in the United States and Canada. By the end of 1997, Anicom had acquired 12 companies valued at a total of approximately of $100 million.

Anicom's ability to issue stock and borrow money fueled its acquisition strategy. Anicom maintained a credit agreement with various lenders throughout the class period. The available borrowings under the credit agreements increased from $50 million at the beginning of the class period to $150 million at the end of the class period. The credit agreements contained certain financial coveneants, including an interest coverage ratio to which Anicom was required to comply. For example, the December 17, 1999, credit agreement provided that the interest coverage ratio, a ratio of earnings before interest and taxes to interest expense, must be maintained at a 2 to 1 ratio.

Beginning in 1998, Anicom's internal revenue, earnings, and profit growth began to decline. On April 29, 1998, defendants issued a press release announcing record first quarter 1998 results, stating in peritent part, that net income for the quarter ending March 31, 1998, had increased 200.3 percent. On or about May 15, 1998, defendants filed their First Quarter 1998 Form 10-Q reiterating the financial results disclosed in the press release.

On or about July 20, 1998, defendants issued a press release reporting the results for the second quarter and first six months of 1998. The press release stated that the net income available to commonstockholders increased 194 percent. For the three months ending June 30, 1998, the reported basic and diluted earnings per share increased 100 percent. Rpeorted net sales for the second quarter increased 116 percent. In August 1998, defendants filed a Form 10-Q reiterating these results.

In September 1998, defendants issued another press release announcing the acquisition of Texas Cables. Thereafter, Scott issued statements that the acquisition was accretive to earnings and that Anicom was able to accomplish the transaction while maintaining a strong balance sheet. Defendanst also announced that their credit facility increased from $100 million to $125 million. In November 1998, defendants issued a press release announcing record third quarter and nine-month financial results, including that fully diluted earnings per common share increased more than 44 percent and net sales increased 65 percent. That same month, defendants filed a Form 10-Q reiterating these results.

In February 1999, defendants issued a press release announcing a fifth consecutive year of record growth. The press release reported that net sales increased 85 percent in the last quarter of 1998 and 93 percent for the 1998 calendar year. In March 1999, defendants filed a Form 10-Q

3

reiterating these results.

In May 1999, defendants issued a press release announcing "record first quarter results". The release reported that net income available to common stockholders increased 17 percent, and net sales increased 34 percent. Later that month, defendants filed a Form 10-Q reiterating these results.

In July 1999, defendants issued a press release reporting that Anicom expected sales for the second quarter of 1999 to be less than expected due to disappointing results of an acquisition from 1997. In August 1999, defendants issued a press release reporting a 17 percent increase in net sales for the second quarter of 1999 and a 25 percent increase in net sales for the first six months of 1999. That same month, defendants filed a Form 10-Q reiterating these results.

On October 1, 1999, defendants announced an anticipated $12 million third-quarter charge relating to restructuring and acceleration of expenses. In November 1999, defendants issued a press release reporting a net loss of $12 million for the third quarter and a net loss of $9 million for the nine month period ending September 31, 1999. It reported that Anicom's net sales for the third quarter increased 8 percent and 19 percent for the nine-month period. Defendants filed a Form 10-Q reiterating these results.

In February 2000, Anicom released a press release reporting that Anicom had a $3 million increase in net sales for the last quarter of 1999 and a net sales increase of 14 percent for 1999. Anicom reported that the company had a net loss of $10 million for 1999. In March 2000, defendants filed a Form 10-Q reiterating these results.

In May 2000, Anicom issued a press release reporting record net sales for the first quarter of 2000. Later that month, defendants filed a Form 10-Q reiterating these results.

4

On July 18, 2000, Anicom issued a press release announcing that it was investigating "certain accounting matters, including possible accounting irregularities, which, if confirmed, could result in revision of previously issued financial statements."

On November 13, 2000, Anicom released unaudited financial information that showed, for the nine quarters ending with the first quarter of 2000, Anicom had overstated its gross revenue by approximately $39.6 million and its net income by approximately $34.4 million. A restatement was never issued, and Anicom filed for bankruptcy on January 5, 2001.

Plaintiffs' complaint alleges primary liability pursuant to §10(b) against Scott, Putman, and Welchko (collectively defendants) and secondary liability pursuant to §20(a) against Scott, Putman, Welchko, and Alan.

II. ANALYSIS

A claim may not be dismissed if there is a set of facts that, if proven, would entitle a plaintiff to relief. *Trans All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1426 (7th Cir. 1996.) The court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." *Pokuta v. Trans World Airlines, Inc.*, 191 F.3d 834, 839 (7th Cir. 1999). A motion to dismiss tests the sufficiency of a complaint, not its merits. *Gibson v City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). However, the court is not required to accept conclusory allegations as true. *Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 730 (7th Cir. 1994).

Federal Rule of Civil Procedure 9(b) requires plaintiffs plead the circumstances constituting fraud with particularity. "This means the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (*DiLeo*).

The PSLRA imposes even more stringent pleading standards on private plaintiffs seeking

5

relief pursuant to § 10(b). The PSLRA requires plaintiffs to "specify each statement alleged to have been misleading." 15 U.S.C. § 78u-4(b)(1). In addition, plaintiffs must "state with particularity facts giving rise to a strong inference that the defendants acted with the requisite state of mind." 15 U.S.C. § 78u-4(b)(2). If these requirements are not met, the court shall dismiss the complaint. 15 U.S.C. § 78u-4(b)(3)(A).

To state a claim for securities fraud under § 10(b), plaintiffs must allege: (1) a misrepresentation or omission, (2) of material fact, (3) made with scienter, (4) in connection with the purchase of sale of securities, (5) upon which plaintiffs relied, and (6) that reliance proximately caused plaintiffs' injuries. *In re Healthcare Compare Corp. Sec. Litig.*, 75 F.3d 276, 280 (7th Cir. 1996).

Here, plaintiffs allege that Security Exchange Commission (SEC) forms filed by Anicom and signed by defendants, and press releases relating to these filings, contained material misrepresentations because the filings and statements failed to reveal that for nine quarters the defendants artificially inflated Anicom's reported earnings and profits. Plaintiffs allege that defendants engaged in accounting fraud by issuing "prebill" invoices for goods that were not shipped and for services that were not performed, creating fictitious prebill invoices through the "Drop-Ship" department, the deferral of credits due Anicom customers, overstating vendor rebates, understating expense accruals, and understating inventory costs. Evidence of the alleged fraud includes the intention to file a restatement and Anicom's admission that it would be required to restate its income by $35 million because Anicom had overstated revenues and recognized revenue that should not have been recognized.

In the complaint, plaintiffs identify each statement that they believe was false and allege why

6

each statement was false. Plaintiffs go into detail why each statement was misleading; but, in general, plaintiffs allege that the statements were misleading because they reported increased sales and increased profits when defendants knew that the company was actually in financial trouble and that the reported numbers were false because they were generated through prebilling and fictitious orders. For example, the complaint alleges that Scott, Putnam and Welchko (who) implemented a fraudulent prebilling scheme (what) using computer programs from their offices (where) at the end of each quarter (when) by having their Regional managers prebill premature invoices (how) in order to make end of quarter results (why). Such pleading is sufficient to meet the requirements of Rule 9(b) and the PSLRA. *See Chu v. Sabratek Corp*, 100 F.Supp.2d 827, 836 (N.D.Ill. 2000) (*Chu II*) (plaintiffs supplied sufficient details, including the contents of the misrepresentations, date and location of misrepresentations, and how the misrepresentation furthered the alleged fraudulent scheme); *Market Street Sec. v. Racing Champions Corp.*, 2000 WL 1727788 (N.D.Ill. Nov. 21, 2000) (*Market Street*) (plaintiffs identified each misleading statement, the dates the statements were made, persons responsible for the statements, and alleged each statement was misleading because they suggested that the company would continue to prosper when defendants knew the company was experiencing financial problems).

Defendants argue that plaintiffs have specifically identified only 14 transactions that may have been the result of fraud; therefore, all claims based on any unidentified transactions must be dismissed. The argument is not persuasive. Courts have found that a complaint need not describe each specific transaction in detail. *See First Merchants Acceptance Corp. Sec. Litig.*, 1998 WL 781118 (N.D.Ill. Nov. 4, 1998) (*First Merchants*); *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997); *SEC v. Feminella*, 947 F.Supp. 722, 733 (S.D.N.Y. 1996). In addition, the general averments

7

and the 14 specific transactions give adequate notice to defendants of the claims asserted them, and the information concerning the other transactions is primarily in the hands of the defendants. Plaintiffs have met their burden at this stage of the litigation. *See Market Street*, 2000 WL 1727788 at * 3; *First Merchants*, 1998 WL 781118 at * 8.

Defendants also argue that plaintiffs failed to sufficiently plead scienter.

The PSLRA provides that a complaint must "state with particularity facts giving rise to a strong inference" that the defendants acted with scienter. 15 U.S.C. § 78u04(b)(2). Scienter is established by demonstrating that the defendants had both motive and opportunity to commit fraud or by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *Rehm v. Eagle Finance Corp.*, 954 F.Supp. 1246, 1253 (N.D.Ill. 1997) (*Rehm*), citing *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2nd Cir. 1994); *In re Nanophase Tech. Corp. Sec. Litig.*, 2000 WL 1154631 (N.D.Ill. Aug. 4, 2000) (*Nanophase*). 'Reckless conduct is, at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care ... to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.' Rehm, 954 F.Supp. at 1255, quoting *Rolf v. Blyth, Eastman Dillion & Co.*, 570 F.2d 38, 47 (2nd Cir. 1978).

General accounting practice violations and/or financial restatements, standing alone, are insufficient to raise an inference of scienter. *See Rehm*, 954 F.Supp. at 1255. However, a company's overstatement of earnings or revenues combined with other circumstantial evidence can suggest fraudulent intent sufficient to support a strong inference of scienter. *Chu v Sabratek Corp.*, 100 F.Supp.2d 815, 824 (N.D.Ill. 2000).

In the instant case, plaintiffs allege violations of general accounting practices, and Anicom

8

admits that a financial restatement is required; however, it has not been issued. In addition, the complaint alleges that Scott, Putman, and Welchko knew of the prebilling and fictitious invoices because they were procured at the defendants' direction. Defendants also took an active part in the dissemination of the press releases and SEC filings that misrepresented Anicom's actual quarterly and yearly finances. In addition, the complaint alleges that the defendants had the ability and did monitor orders and should have noticed the large number of orders input near the end of the quarter and that such orders significantly changed the outcome of the quarter's results. Thus, the allegations raise a strong inference that the defendants knew or recklessly disregarded that Anicom was disseminating incorrect information and that Anicom was having financial difficulties. Despite this knowledge, defendants failed to correct any press releases or SEC filings.

Defendants also argue that the complaint insufficiently pleads liability against Scott, Putman, and Welchko as individual defendants. Once again, a review of the complaint indicates otherwise.

As to defendant Scott, plaintiffs allege that he signed at least two of the SEC filings that he knew contained false information, he made numerous misleading and false press releases, he took part in the prebilling and fictitious invoice "scheme", and his position within Anicom placed him in a position to know what was happening and to carry out the scheme.

Plaintiffs allege that Putman signed at least two of the SEC filings that he knew contained false and misleading information, he took part in the prebilling and fictitious invoice scheme, and he made numerous false and misleading announcements concerning the status of Anicom when he knew that the only reason the sales and profits were what they were reported as was because of the prebilling and fictious invoices.

Plaintiffs allege that Welchko signed every quarterly and annual financial statement issued

by Anicom that contained false and misleading information, and he supervised the deferred credit plan and took part in the fictitious invoice scheme. In addition, Welchko was a member of Anicom's Audit Committee, which was responsible for Anicom's auditing program and used such position to aid in not disclosing the scheme. These allegations sufficiently plead a cause of action against the individual defendants.

Defendants also argue that plaintiffs' complaint does not sufficiently plead liability for Scott, Putnam, and Welchko because it relies on "group pleading" – that a company's statements may be presumed to be the collective work of those individuals with direct involvement in the everyday business of the company-- which was abolished by the PSLRA.

The Seventh Circuit has not ruled on the applicability of "group pleading" following the more stringent pleading requirements of the PSLRA. The courts are split on whether it still exists. *See Danis v. USN Communications, Inc.*, 73 F.Supp.2d 923, 939 n.9 (N.D.Ill. 1999); *In re Allied Prod. Corp. Sec. Litig.*, 2000 WL 1721042 (N.D.Ill. Nov. 15, 2000); *Koehler v. Nationsbank Corp.*, 1997 WL 80928 (N.D.Ill. Feb. 27, 1997); *In re Oxford Health Plans, Inc. Sec. Litig.*, 187 F.R.D. 133, 142 (S.D.N.Y. 1999) (all allowing group pleading) *but see, Chu II*, 100 F.Supp.2d at 837; *Marra v. Tel-Save Holdings, Inc.*, 1999 WL 317103 (E.D. Penn. May 18, 1999) (PSLRA abolished group pleading).

Based on the above findings concerning the pleadings against the individual defendants, the Court need not determine if group pleading survives the PSLRA. The above allegations against the individual defendants demonstrate that plaintiffs rely on more than the group pleading presumption to sufficiently allege a cause of action against the individual defendants. Accordingly, defendants Scott, Putman, and Welchko's Motion to Dismiss the 10(b) claims is denied.

Alan Anixter filed a motion to dismiss the § 20(a) claim against him, alleging that the claim must be dismissed because plaintiffs failed to adequately plead primary liability under § 10(b), and the complaint fails to allege a claim for control person or secondary liability for securities fraud against him. 15 U.S.C. § 78(t).

Having concluded that plaintiffs successfully pled a § 10(b) claim against the other defendants, Alan's motion to dismiss on the basis of lack of § 10(b) liability is denied.

Plaintiffs must demonstrate that Alan, as the alleged control person, actually exercised general control over the operations of the primary violator and that he had the power or ability to control the specific transaction or activity upon which the primary violation is predicated even if that power was not exercised. *See Donohue v. Consolidated Operating Prod. Corp.*, 30 F.3d 907, 911-12 (7th Cir. 1994). Section 20(a) does not have a scienter requirement or a heightened pleading standard. Accordingly, liberal pleading requirements apply. *Chu II*, 100 F.Supp.2d at 843.

Plaintiffs allege that Alan was a director of Anicom for several years, Chairman of the Board of Directors until September 1999, and Chairman of the Executive Management Committee from September 1999 through May 2000 and that these positions gave Alan direct control over Anicom and the power or ability to control specific transactions to which primary liability is predicated. Such allegations are sufficient at this stage of the pleadings. *See Chu II*, 100 F.Supp.2d at 843; *In re System Software*, 2000 WL 283099 (N.D.Ill. Mar. 8, 2000); *Nanophase*, 2000 WL 1154631 at *7.

III. CONCLUSION

For the reasons stated above, defendants' Motions to Dismiss are denied.

Dated:

JOHN W. DARRAH
United States District Judge

11